**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| CARRIE CULLEN., ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 14-40097-TSH** |
| THE HENRY HAYWOOD MEMORIAL HOSPITAL ) | |
| and MASSACHUSETTS NURSING ASSOCIATION, ) | |
| Defendants ) | |

**MEMORANDUM OF DECISION AND ORDER ON
DEFENDANT HENRY HAYWOOD HOSPITAL'S MOTION TO DISMISS
AND DEFENDANT MASSACHUSETTS NURSING ASSOCIATION'S
MOTION FOR JUDGMENT ON THE PLEADINGS**
March 26, 2015

**HILLMAN, District Judge**

**Background**

Plaintiff, Carrie Cullen ("Plaintiff") has filed a Complaint against defendants, Henry Haywood Memorial Hospital ("the Hospital") and the Massachusetts Nursing Association ("MNA") alleging violations of the Labor Management Relations Act, 29 U.S.C. § 185(a), discrimination under Mass. Gen. L. c.151(b) and state tort claims. The Hospital moved to dismiss all counts asserted against under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The MNA filed a motion for judgment on the pleadings on all claims against it, pursuant to Fed. R.Civ.P. 12(c). This Court heard oral argument on that motion, at which time Plaintiff conceded that the following claims be dismissed as they are preempted by Section 301: wrongful termination against the Hospital (Count II); intentional infliction of emotional distress (Count V) and negligent infliction of emotional distress (Count VI) against the

MNA. This memorandum of decision addresses the remaining claims: Counts I, IV, V, and VI against the Hospital and Counts III and IV against the MNA.

## Facts

For the purposes of this motion, all facts set forth in the Complaint will be accepted as true. On or about June 9, 2008, Plaintiff began employment with the Hospital as a registered nurse and she primarily worked in the obstetrical department. As a registered nurse employed by the Hospital, Plaintiff was a member of the MNA, which is a labor organization which serves as the representative of a bargaining unit of staff registered nurses employed by the Hospital. The MNA and the Hospital have been parties to a series of collective bargaining agreements ("CBAs"), including the one that was in effect from October 1, 2011 through September 31, 2013. Plaintiff performed her job without incident until she injured her hip on January 16, 2012 and had to take a medical leave of absence while she underwent surgery, treatment, and physical therapy for her injuries.

In early April 2013, the Hospital held a meeting with the MNA and the Plaintiff, at which it intended to tell the Plaintiff that her employment would be ended if she was not then able to return to work. During that meeting, the Hospital agreed to the MNA's proposal that in lieu of terminating her employment, the Hospital would extend Plaintiff's leave of absence by an additional six months, until November 1, 2013. Among other things, the MNA agreed that it would not file a contract grievance in the event that the Hospital terminated the Plaintiff's employment due to her inability to return to work by the new deadline. In early September, 2013, Plaintiff had not returned to work, but was medically authorized to return to work on a modified or light duty basis. The Hospital, however, did not offer her a light duty assignment and terminated her employment on November 7, 2013 because Plaintiff had not returned to work.

The MNA did not file a grievance challenging that termination and there is no allegation that the Plaintiff asked the MNA file a grievance, nor any allegation that she filed one on her own. Plaintiff filed a complaint in Worcester Superior Court on June 19, 2014. On July 9, 2014, the MNA filed an answer in state court and also filed a notice of removal in federal court.

## Discussion

*Claims Against the Hospital -- 12(b)(6) Standard of Review*

To survive a Rule 12(b)(6) motion to dismiss, the factual allegations in a complaint must "possess enough heft" to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A case has 'facial plausibility' when plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Plausible, of course, means more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific' job that compels [the Court] 'to draw on' [its] 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

Dismissal for failure to state a claim is appropriate where pleadings fail to set forth factual allegations respecting each element necessary to sustain recovery under a legal theory. *Gagliardi v. Sullivan*, 513 F.3d 302, 304 (1st Cir. 2008). In considering the adequacy of the pleadings, the Court accepts all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Schatz*, 669 F.3d at 55.

*Violation of 29 U.S.C. § 185*

Plaintiff's "hybrid" claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301") (Count IV) alleges that the MNA violated its duty of fair representation to Plaintiff by agreeing with the Hospital as to the maximum duration of

3

Plaintiff's medical leave under the CBA, and that the Hospital, in turn, violated the CBA by implementing this agreement. Section 301 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). Both Defendants argue that falls outside the six-month limitations period for such claims and, as such, is time-barred. Plaintiff argues that an express statute of limitations for claims under the LMRA does not exist, and notwithstanding, any limitations period applicable to Count IV should be tolled during the time that Plaintiff's claims were pending with MCAD.

The Court of Appeals for the First Circuit has decided this issue in favor of a limitations period. "[T]he six-month statute of limitations of section 10(b) of the Labor Management Relations Act applies to 'hybrid' actions brought under section 301 of that Act." *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir. 1985) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-72, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983)). "A cause of action in a hybrid Section 301/fair representation suit arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Id.* In cases involving the termination of employment, the cause of action accrues "no later than" the termination date. *Adorno v. Crowley Towing and Transportation Co.*, 443 F.3d 122, 127 (1st Cir. 2006). *See also Socha v. Nat'l Ass'n of Letter Carriers*, 883 F. Supp. 790, 801 (D.R.I. 1994) (examining each "event" described in the complaint to see whether they occurred before or after the six-month limitations period).

Because Plaintiff did not file this civil action until June 19, 2014, more than seven months following her termination from the Hospital, dismissal of this claim as time-barred is mandated. *See Adorno*, 443 F.3d at 126-27 (affirming ruling that Section 301 claims filed 20 days after expiration of six-month limitations period were time-barred); *Arriaga-Zayas v. Int'l*

*Ladies' Garment Workers' Union-Puerto Rico*, 835 F.2d 11, 13 (1st Cir. 1987) (explaining, in affirming dismissal of Section 301 suit as time-barred, that "the aggrieved workers were bound … to sue within the six month limitations period or forever hold their peace"); *Graham*, 779 F.2d at 94 (affirming dismissal of Section 301 suit as time-barred). Accordingly, the Hospital's motion to dismiss is allowed as to Count IV.

*Common Law Tort Claims – Counts V and VI*

Plaintiff's common-law claims intentional infliction of emotional distress (Count V) and negligent infliction of emotional distress (Count VI) are based on the allegation that the Hospital, in administering the CBA in conjunction with Plaintiff's union representatives, terminated her employment in violation of the CBA's provisions on medical leave. Plaintiff argues that the actions of the Hospital in denying her reasonable accommodation and terminating her position do not depend on the meaning of the CBA and are not pre-empted by the CBA. Plaintiff further argues that her claims for emotional distress flow from her state discrimination claim and therefore can be considered independently of the CBA, *see infra*. The Hospital contends that these claims depend on the CBA and therefore are preempted by Section 301.

"[S]ection 301 preempts a state law claim 'if the resolution of [that] claim depends on the meaning of a collective bargaining agreement.'" *Filibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1s Cir. 1997) (quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). A state-law claim depends upon the meaning of a collective bargaining agreement if: (i) "it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement," or (ii) "its resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Troconis v. Lucent Technologies Inc.*, 160 F. Supp. 2d 150, 154-55 (D.Mass. 2001).

5

For the Plaintiff's claim of negligent infliction of emotional distress to avoid preemption, she must show that it does not arise from duties imposed by the CBA, but instead that the Hospital has "'acted in a way that might violate the duty of reasonable care owed to every person in society.'" *Flibotte,* 131 F.3d at 26, quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990). It appears impossible to resolve the Hospital's negligence without "without inquiring into its rights and obligations" as described in the CBA. *Filibotte*, *id.* at 27. Plaintiff's reliance on the *Naitram* case in her brief is misplaced, as the plaintiff in *Naitram* was neither a union member nor a member of the bargaining unit covered by the CBA. *Naitram v. Local 2222 of the International Brotherhood of Electrical Workers*, 982 F. Supp. 83 (D.Mass. 1997).

The Hospital contends that the emotional distress claim cannot stand because the wrongfulness of Plaintiff's termination and the emotional distress that Plaintiff claims flows from the employment actions allegedly caused her distress. Resolving this claim will necessarily depend on whether the Hospital breached the CBA's provisions governing medical leaves of absence and provisions regarding termination, and that determination, in turn, cannot be made except by reference to the Hospital's authority under the CBA. *See Complaint* at ¶12-13 and ¶20-21. Resolution of this issue necessarily requires an interpretation of the Hospital's authority to discharge an employee under the CBA and the claim in Count V focuses on the (result of) the conduct of the Hospital during the termination process. Accordingly, Count V is preempted under Section 301.[1]

To make out a claim for intentional infliction of emotional distress under Massachusetts law, Plaintiff must show that the Hospital "(1) intended to inflict emotional distress by (2)

---

[1] Plaintiff also argues that her state claims for emotional distress are not preempted, because they are a "natural and probable consequence of her discrimination claims under Chapter 151B." See Plaintiff's Opposition to Defendant The Henry Heywood Memorial Hospital's Motion to Dismiss Plaintiff's Complaint," Docket No. 12, at p. 6. The Massachusetts state cases cited by the Plaintiff reference the issue of emotional distress damages under c. 151B and are inapposite here.

undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress which (4) was severe." *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 27 (1st Cir.1997). Extreme and outrageous conduct is behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Foley v. Polaroid Corp.*, 400 Mass. 82, 508 N.E.2d 72, 82 (1987) (citation omitted) (internal quotation marks omitted). Only an inquiry into the CBA would resolve the issue of what rights and obligations the Hospital had, and whether the Hospital acted with the requisite intent and outrageousness that would give rise to this tort. *Accord*, *Flibotte*. Count VI is therefore preempted by Section 301.

*State Law Discrimination – Mass. Gen. L. c. 151(b)*

Count I of Plaintiff's Complaint asserts a violation of M.G.L. c. 151B, § 4(16) against the Hospital, alleging that the Hospital discriminated against the Plaintiff when it denied her a reasonable accommodation upon returning to her job as a nurse after her injury. Further, the Plaintiff claims that she was also discriminated against by the Hospital when it terminated from her position. Defendants argue that, like the common law tort claims, Plaintiff's claim for discrimination is preempted by Section 301.

Claims under Chapter 151B are "independent, non-negotiable rights founded not only in state statute, but in a federal statute, the American With Disabilities Act." *Ralph v. Lucent Technologies, Inc.*, 135 F.3d 166, 171 (1st Cir.1998). These rights exist independently of collective bargaining agreements and do not require any interpretation of those agreements. *Id.* The *Ralph* case, relied on by the Plaintiff, holds that state and federal discrimination statutes are not preempted by the Labor Management Relations Act – § 301, 29 U.S.C. § 185. *Id.* In *LaRosa v. United Parcel Service, Inc.*, 23 F.Supp.2d 136, 144 (D.Mass. 1998), the Court articulated a

basis for the exemption of state law discrimination claims from the purview of the LMRA: "[w]ere this Court to accept [that state law based anti-discrimination action is preempted by the Labor Management Relations Act] . . . [s]uch a rule would provide union employers with irresistible incentive to pour into the collective bargaining agreement all the safety, insurance, and individual rights protected by state law, and then claim immunity from suit . . . '[s]uch a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored.'" An "improper termination claim under [a] collective bargaining agreement and employment discrimination claims under Chapter 151B require consideration of the same set of facts does not mean that the state law claims are *dependent* on the collective bargaining agreement." *LaRosa*, 23 F.Supp.2d at 148 (emphasis in original).

The essence of Plaintiff's claim is that the Hospital deprived her of statutory rights guaranteed by Massachusetts law. The Hospital contends that the validity of its employment decisions depends on an interpretation of the CBA, and that application of Chapter 151B to these decisions would generate the inconsistencies that *Lingle* addressed. See *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988). While the reference to the promotion and termination provisions of the CBA may be relevant to the analysis of this claim, resolution of the discrimination claim does not in any way "depend" on interpretation of the CBA. The rights guaranteed to the Plaintiff by Chapter 151B exist independent of the CBA; and as such, the principles mandating preemption under § 301 are inapplicable here.

Since no interpretation of a CBA could validate the Hospital's conduct toward the Plaintiff if that conduct was discriminatory in nature, as prohibited by Chapter 151B, the interpretation of any relevant CBA terms would not be determinative in this case. *See Livadas v.*

*Bradshaw*, 512 U.S. 107, 123 (1994) ("[Section] 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law.") On this basis and set of facts, Plaintiff has set forth a plausible claim of discrimination under Chapter 151B and the Hospital's motion to dismiss is denied as to Count I.

*Rule 12(c) Standard of Review -- Claims Against the MNA*

A motion pursuant to Rule 12(c) is proper after an answer has been filed and the "facts conclusively establish the movant's entitlement to a favorable judgment." *Patrick v. Rivera-Lopez*, 708 F.3d 15, 18 (1st Cir. 2013). A Rule 12(c) motion is examined in the same light as a Rule 12(b)(6) motion. *Id* (noting that Rule 12(b)(6) and Rule 12(c) motions "are ordinarily accorded much the same treatment"). "[T]he complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).

A motion under Rule 12(c) is appropriate as to claims that are federally preempted and/or have been brought after the applicable statute of limitations has run. See *United States v. Rhode Island Insurers' Insolvency Fund*, 80 F.3d 616, 618 (1st Cir. 1996); *Greenpack of Puerto Rico, Inc. v. American President Lines*, 684 F.3d 20, 23 (1st Cir. 2012). It also may be used to test the "facial plausibility" of a complaint. *See Grajales*, *supra*, 682 F.3d at 44 ("Under ordinary circumstances, a court may measure the plausibility of a complaint by means of a motion for judgment on the pleadings.")

As was previously discussed, any claims brought by the Plaintiff under Section 301 are time barred. Therefore, the MNA motion for judgment on the pleadings as to Counts III and IV is granted.

**ORDER**

For the reasons stated above, Defendant Hospital's Motion to Dismiss (Docket No. 5) is *granted* as to Counts IV, V and VI and *denied* as to Count I. Defendant MNA's Motion for Judgment on the Pleadings (Docket No. 14) is *granted* as to all claims.

SO ORDERED.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE